**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JOE TORRIS BAXLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1048 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Joe Torris Baxley, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB").  (Docket Entry 1.)  Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 15; see also Docket Entry 13 (Plaintiff's Corrected Brief); Docket Entry 16 (Defendant's Memorandum)).  For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of September 17, 2013.  (Tr. 191-94.)  Upon denial of that application initially (Tr. 79-93, 117-20) and on reconsideration (Tr. 94-112,

144-51), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 128-30). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 31-75.) The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 12-25.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 188-90, 338-42), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2020.

2. [Plaintiff] has not engaged in substantial gainful activity since September 17, 2013, the alleged onset date.

3. [Plaintiff] has the following severe impairments: osteoarthritis, to include bilateral knees; degenerative joint disease, right shoulder; carpal and cubital tunnel syndrome, right upper extremity; degenerative disc disease of the cervical and lumbar spine with radiculopathy; lumbar stenosis with neurogenic claudication; spondylolisthesis; obstructive sleep apnea ("OSA"); insomnia; obesity; and depressive disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with exceptions.

[Plaintiff] can stand and/or walk up to six hours in an eight-hour workday; sit up to six hours in an eight-hour workday; lift and/or carry 10 pounds frequently and 20 pounds occasionally; and push/pull up to the weight capacity for lifting and carrying.  He must be able to alternate between sitting and standing positions every 30 minutes.  He can occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl.  He can occasionally reach overhead with the right upper extremity and frequently handle objects, finger and feel with the right upper extremity.  He can tolerate no exposure to very loud noise and occasional exposure to unprotected heights, hazardous machinery or hazardous moving mechanical parts.  [Plaintiff's] work is limited to simple, routine and repetitive tasks but not at a production rate pace and frequent interaction with the public. [Plaintiff] would be off task no more than 10% of the time in an eight-hour workday, in addition to normal breaks (with normal breaks defined as a 15-minute morning and afternoon break and a 30-minute lunch break).

. . .

6.   [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from September 17, 2013, through the date of this decision.

(Tr. 17-25 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If

there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

several points in the SEP forecloses an award and ends the inquiry.

For example, "[t]he first step determines whether the claimant is

engaged in 'substantial gainful activity.' If the claimant is

working, benefits are denied. The second step determines if the

claimant is 'severely' disabled. If not, benefits are denied."

Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at

each of the first three steps, "the claimant is disabled." Mastro,

270 F.3d at 177. Alternatively, if a claimant clears steps one and

two, but falters at step three, i.e., "[i]f a claimant's impairment

is not sufficiently severe to equal or exceed a listed impairment,

the ALJ must assess the claimant's residual functional capacity

('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

whether, based on that RFC, the claimant can "perform past relevant

work"; if so, the claimant does not qualify as disabled. Id. at

179-80. However, if the claimant establishes an inability to

return to prior work, the analysis proceeds to the fifth step,

whereupon the ALJ must decide "whether the claimant is able to

_____

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's finding at [s]tep [f]ive of the [SEP] that Plaintiff could perform the jobs of [T]icket [T]aker, [C]ashier, and [O]ffice [H]elper w[as not] supported by substantial evidence" (Docket Entry 13 at 4);[5]

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[5] This phrasing of Plaintiff's first issue on review appears in Plaintiff's Brief in the "Statement of the Issues" section.  (Docket Entry 13 at 4 (capitalization and underscoring omitted).)  Plaintiff's later heading for that issue in the "Argument" section of his Brief, contending that "[t]he ALJ failed to provide legally sufficient reasons supported by substantial evidence for the weight afforded to the medical opinion evidence" (id. (capitalization, underscoring, and single-spacing omitted)), appears to constitute a typographical error, as Plaintiff addresses the ALJ's evaluation of the medical opinion evidence in his third assignment of error (see id. at 4, 17-19).

2) "[t]he ALJ failed to provide legally sufficient reasons based on substantial evidence for rejecting Plaintiff's symptom reports" (id. at 11 (capitalization, underscoring, and single-spacing omitted)); and

3) "[t]he ALJ erred in weighing the medical opinion evidence" (id. at 17 (capitalization and underscoring omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 16 at 3-15.)

## 1. Conflict Between the VE's Testimony and the _Dictionary of Occupational Titles_ ("_DOT_")

In Plaintiff's first issue on review, he claims that "the ALJ's finding at [s]tep [f]ive of the [SEP] that Plaintiff could perform the jobs of [T]icket [T]aker, [C]ashier, and [O]ffice [H]elper w[as not] supported by substantial evidence." (Docket Entry 12 at 4.) In particular, Plaintiff faults the ALJ for failing to identify and resolve a conflict between the VE's testimony and the DOT in violation of Pearson v. Colvin, 810 F.3d 204, 210-12 (4th Cir. 2015), and Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of [VE] and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("SSR 00-4p"). (Docket Entry 13 at 7-11.) More specifically, Plaintiff maintains that "the record contains no explanation for [the] ALJ's reliance on the [VE's] testimony that

Plaintiff would be capable of performing the jobs of [T]icket [T]aker, [C]ashier, and [O]ffice [H]elper considering his limitation to alternate between sitting and standing every thirty minutes, and the [DOT], which does not address the need to alternate between sitting and standing." (Id. at 9.) According to Plaintiff, "[t]he ALJ's questioning [of the VE regarding conflicts with the DOT] prior to designating the [VE] as an expert did not cure th[at] defect." (Id. (emphasis added).) Plaintiff's contentions do not warrant relief.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the

[DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

In this case, the ALJ and the VE engaged in the following, preliminary colloquy prior to the VE's responses to the ALJ's hypothetical questions:

ALJ:     Do you understand that if you provide an opinion here today which conflicts with or is not covered by the information in the . . . [DOT], or its companion publication, the Selected Characteristics of Occupations [("SCO")] . . . you need to advise me of that fact and the basis for your opinion[?]

VE:      I do.

ALJ:     If you provide me an opinion or answer that conflicts with or is not covered by the [DOT] or the [SCO], will your opinion or answer be based on your education, training, and professional experience?

VE:      That's correct, Your Honor.

ALJ:     Does that include, among other things, opinions or answers regarding a sit/stand option, reaching overhead, time off task, normal breaks, absences from work, use of hand and foot controls, and interaction with the public, coworkers, and supervisors?

VE:      That's correct, Your Honor.

(Tr. 69-70 (emphasis added).)

The ALJ thereafter queried the VE whether a "person of [Plaintiff's] age, education, and work experience who could perform light work with the following limitations: occasionally climb ramps

11

or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead with the right upper extremity; frequently handle objects, finger and feel with the right upper extremity; no exposure to very loud noise; occasional exposure to unprotected heights, hazardous machinery, or hazardous moving mechanical parts; work limited to simple routine and repetitive tasks, but not at a production rate pace; [and] frequent interaction with the public" could perform any past relevant work or any other jobs in the national economy. (Tr. 71-72.) In response, the VE opined that such an individual could not perform any past relevant work, but remained able to perform the jobs of Ticket Taker, Photocopying Machine Operator, and Cashier, and provided the corresponding <u>DOT</u> codes and national job numbers for those positions. (<u>See</u> Tr. 72.)

The ALJ next requested the VE to "[a]ssume the same person and limitations as in hypothetical number one," as well as to assume that the individual required the opportunity "<u>to alternate between sitting and standing positions every 30 minutes</u>," and then asked the VE whether such an individual could perform any jobs. (<u>Id.</u> (emphasis added).) In response, the VE stated that the individual would still remain able to perform the Ticket Taker and Cashier jobs, and that those jobs' available numbers would remain the same. (<u>Id.</u>) The ALJ subsequently asked: "Would you have <u>another job</u> that you could offer me <u>with a sit/stand option</u>?" (<u>Id.</u> (emphasis

added).)  In response, the VE cited the job of Office Helper and provided national job numbers.  (Id.)

The ALJ then found that Plaintiff lacked the ability to perform any of his past relevant work (see Tr. 23), and adopted the VE's testimony as to Plaintiff's ability to perform the Ticket Taker, Cashier, and Office Helper jobs:

> To determine the extent to which [the RFC's limitations] erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC].  The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative light, [Specific Vocational Preparation ("SVP")] 2 occupations such as: [T]icket [T]aker, [DOT] No. 344.667-010, with approximately 20,000 such jobs in the national economy; [C]ashier, [DOT] No. 211.462-010, with approximately 190,000 such jobs in the national economy; and [O]ffice [H]elper, [DOT] No. 239.567-010, with approximately 15,000 such jobs in the national economy.
>
> Pursuant to SSR 00-4p, the [ALJ] has determined that the [VE's] testimony is consistent with the information contained in the [DOT].  The [VE] credibly testified that her testimony regarding any matters not addressed by the [DOT], such as a sit/stand option, reaching overhead, and time off task, was based on her education, training and professional experience.

(Tr. 24 (emphasis added)).

Plaintiff contends that individuals needing sit/stand options lack the capability to perform "'the prolonged standing or walking contemplated by most light work,'" and that "[m]ost unskilled jobs, such as the ones that the [VE] identified, are 'particularly struct[ur]ed so that an individual cannot ordinarily sit or stand

at will.'"  (Docket Entry 13 at 8 (quoting Social Security Ruling 83-12, <u>Titles II and XVI: Capability to Do Other Work – the Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work</u>, 1983 WL 31253, at *4 (1983) ("SSR 83-12")).)  According to Plaintiff, those characteristics of unskilled light work, in addition to the <u>DOT</u>'s "silen[ce] on sit-stand options in light duty work" (<u>id.</u>), created a conflict between the VE testimony in this case and the <u>DOT</u> that neither the ALJ nor the VE resolved (<u>id.</u> at 9-11).

Contrary to Plaintiff's assertions, he has not shown "where the [VE's] testimony seem[ed] to, but d[id] not necessarily, conflict with the [<u>DOT</u>]," <u>Pearson</u>, 810 F.3d at 209.  As Plaintiff has failed to point to <u>specific</u> duties or requirements in the <u>DOT</u>'s descriptions of the Ticket Taker, Cashier, and Office Helper jobs that would not harmonize with a sit/stand option every thirty minutes (<u>see</u> Docket Entry 13 at 4-11), he essentially presses the Court to find a <u>per se</u> apparent conflict between the VE and the <u>DOT</u> in cases involving a claimant limited to light work with a sit/stand option.  However, federal district courts in North Carolina, including members of this Court, have not found an apparent conflict to exist in such circumstances.  <u>See, e.g.</u>, <u>Childress v. Berryhill</u>, No. 3:18-CV-00062-FDW, 2018 WL 5045220, at *5 (W.D.N.C. Oct. 17, 2018) (unpublished) (finding no apparent conflict between <u>DOT</u> and VE's testimony that claimant requiring

14

sit/stand option every 30 minutes could perform unskilled, light jobs); Williams v. Colvin, No. 5:15-CV-60-RJ, 2016 WL 1276415, at *5 (E.D.N.C. Mar. 30, 2016) (unpublished) (holding that, "because the [DOT] is silent as to a sit/stand option, there is no conflict between the VE's testimony and the [DOT]"); Cameron v. Colvin, No. 1:12CV1352, 2015 WL 3580879, at *2 (M.D.N.C. June 5, 2015) (unpublished) (Osteen, Jr., C.J.) (noting that it is "not clear that the [DOT] descriptions conflict with [the p]laintiff's RFC at all, because the [DOT] is silent on the sit-stand option"). "To hold otherwise would mean that [VEs] always create conflicts with the [DOT] whenever they mention any of the multitude of things about a job not expressly addressed in the [DOT]," and SSR 00-4p does not "require the discernment of such omnipresent 'conflicts.'" Manley v. Colvin, No. ED CV 16-1179-E, 2016 WL 7191541, at *4 (C.D. Cal. Dec. 12, 2016) (unpublished) (internal citation, some quotation marks, and brackets omitted).

Furthermore, to the extent that an apparent conflict existed between the DOT and the VE's testimony that an individual requiring a sit/stand option every 30 minutes could perform the jobs of Ticket Taker, Cashier, and Office Helper, Plaintiff has not shown that the ALJ failed to resolve that conflict. As the above-quoted testimony makes clear, the VE affirmatively stated that, with regard to matters "that conflict[ed] with or [were] not covered by the [DOT] or the [SCO]," which included "opinions or answers

15

regarding a sit/stand option," she would base her opinions and answers on her "education, training, and professional experience." (Tr. 70 (emphasis added).) That testimony, and the ALJ's later express reliance upon it in adopting the VE's testimony at step five of the SEP (see Tr. 24-25), adequately resolved any apparent conflict that might have existed. See Green v. Colvin, No. 1:10CV561, 2013 WL 3206114, at *11 (M.D.N.C. June 24, 2013) (unpublished) (Webster, M.J.) ("[T]he [DOT] is silent as to the availability of a sit/stand option for . . . particular positions. As such, it was proper for the ALJ to obtain and consider VE testimony in order to supplement the [DOT] job descriptions. The VE was qualified to determine which jobs an individual with [the p]laintiff's RFC could perform, and the ALJ properly relied on the VE's testimony to find [the p]laintiff could perform other work that existed in significant numbers in the national economy."), recommendation adopted, 2013 WL 4811705 (M.D.N.C. Sept. 9, 2013) (unpublished) (Eagles, J.).

Plaintiff nonetheless argues that "[t]he ALJ's questioning [of the VE regarding conflicts with the DOT] prior to designating the [VE] as an expert" failed to resolve the conflict. (Docket Entry 13 at 9 (emphasis added).) That argument fails because Plaintiff has not explained how the prospective nature of the conflicts colloquoy rendered that discussion inadequate to resolve any apparent conflicts. See Cameron v. Colvin, No. 1:12CV1352, 2015 WL

631172, at *9 (M.D.N.C. Feb. 12, 2015) (unpublished) (rejecting the
plaintiff's assertion of unresolved apparent conflict where ALJ
prospectively asked VE, "Do you understand that if you give us an
opinion which conflicts with the [DOT] that you need to advise us
of the conflict and the basis for your opinion?" and VE responded
affirmatively), recommendation adopted, 2015 WL 3580879 (M.D.N.C.
June 5, 2015) (Osteen, Jr., C.J.).[6]

Simply put, Plaintiff's first assignment of error does not
warrant reversal or remand.

## 2. **Evaluation of Plaintiff's Subjective Symptoms**

Next, Plaintiff contends that "the ALJ failed to provide
legally sufficient reasons based on substantial evidence for
rejecting Plaintiff's symptom reports." (Docket Entry 13 at 11
(capitalization, underscoring, and single-spacing omitted).) More
specifically, Plaintiff maintains that "[t]he medical records show
that Plaintiff's physical conditions, including the resulting pain,
were much more severe than the ALJ's characterization" (id. at 13),
and that "[t]he ALJ did not explain how Plaintiff's activities of
daily living undermined his testimony" (id. at 17). Plaintiff's
contentions fall short.

---

[6] Notably, Plaintiff's counsel "had a full and fair opportunity to cross-
examine the VE regarding any possible conflict between her testimony and the
[DOT], but chose not to do so," Cameron, 2015 WL 631172, at *9. (See Tr. 73-74.)

17

SSR 16-3p and the Commissioner's regulations provide a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. § 404.1529. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id. at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8. In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 22.)

According to Plaintiff, "[t]he medical records show that [his] physical conditions, including the resulting pain, were much more severe than the ALJ's characterization." (Docket Entry 13 at 13 (referencing Tr. 22).) Plaintiff then points to the results of diagnostic testing, objective findings on examination, and the different forms of treatment he underwent (see id. at 13-15 (citing Tr. 442-46, 480-81, 487-88, 531, 538-39, 599, 616, 650, 697, 718, 847, 862, 849, 1003, 1008, 1238, 1243, 1247, 1260, 1296, 1353, 1637, 1642, 1652, 1664, 1688, 1696, 1738, 1807, 2086-87, 2184, 2186, 2375)), which he contends demonstrate that his "pain complaints were substantiated by objective evidence," that his "treatment providers did not question the validity of his reporting," that he "consisten[ly] complied with treatment recommendations and nonetheless required surgery," and that, "[e]ven after surgery, [his] pain required more than just conservative treatment as evidenced by the cervical steroid injection [he] received less than two months after surgery." (Id. at 16 (citing Tr. 2375).) With regard to Plaintiff's daily activities, he argues that "[t]he ALJ did not explain how Plaintiff's activities of daily living undermined his testimony," and that his "testimony was actually consistent with the record because it showed that while Plaintiff was able to engage in some limited activities, he did so at his own pace and with breaks as needed." (Id. at 17.)

Here, the ALJ's analysis of the intensity, persistence, and limiting effects of Plaintiff's symptoms complied with the regulatory requirements. As reflected in the Commissioner's brief (see Docket Entry 16 at 8-9), substantial evidence supports the ALJ's primary reasons for discounting Plaintiff's statements:

- "[R]epeat exams showed at most some decreased range of motion, decreased grip strength, and pain with palpation," and Plaintiff remained "neurologically intact with full 5/5 motor strength in his upper and lower extremities" and stable gait (Tr. 22; see Tr. 350, 391, 410, 421, 454, 472, 507, 518, 711, 753, 785, 795, 836 (documenting Plaintiff's gait as "steady" and noting that he "ambulat[ed] with ease"), 443-44, 480, 503, 525, 772, 812, 848, 867, 904, 948, 1029, 1982, 2093, 2185, 2259, 2373 (recording 5/5 or normal strength));

- Plaintiff "reported no pain, weakness, or numbness approximately one month post-[lumbar fusion] surgery" (Tr. 22; see Tr. 2184, 2263 (documenting Plaintiff's statement that he had remained "pain free" since his back surgery until helping a friend move cows in April 2016), 2318 (describing Plaintiff's back surgery as "successful" with "marked pain relief"), 2365 (reflecting Plaintiff's report in April 2015 of 1/10 pain and of "no issues" since fusion));

- Plaintiff "reported relief with his medications" (Tr. 22; see Tr. 594, 651, 746, 2034-35, 2220);

- "Other than during his initial post-operative period, [Plaintiff] did not require any assistive device" (Tr. 22; see Tr. 313, 350, 392, 411, 422, 455, 473, 507, 518, 608, 2090);

- Plaintiff's "OSA, obesity, and insomnia . . . were stable with treatment," and he "reported improved sleep with CPAP and sleeping approximately eight hours" (Tr. 22; see Tr. 594, 725, 746, 869, 1012, 1906);

- "[R]epeat mental status exams showed euthymic mood, appropriate affect, and intact memory" (Tr. 22; <u>see</u> Tr. 480, 486, 725, 746, 772, 813, 868, 904, 948, 1927, 1982, 2035, 2120, 2123, 2224, 2290, 2299, 2311); and

- Plaintiff "was independent in his activities of daily living" and, "[a]lthough his testimony was somewhat contradictory, [Plaintiff] reported to treatment providers that he did not require any assistance for personal care, cooking, or managing his personal finances" and that "[h]e also took [h]orticulture classes and engaged in leisure activities including hunting, fishing, and farming" (Tr. 22; <u>see</u> Tr. 52, 59-65, 67, 308-11, 350, 392, 411, 422, 455, 473, 496, 507, 518, 594, 608, 868, 2050, 2119, 2122, 2214, 2221, 2258, 2287-88, 2311, 2365).

In the face of this substantial evidence, Plaintiff urges, as discussed above, that other evidence in the record conflicts with the ALJ's analysis of Plaintiff's symptom reporting. (<u>See</u> Docket Entry 21 at 13-15.) However, Plaintiff's argument amounts to an impermissible request that the Court simply reweigh the conflicting evidence regarding Plaintiff's subjective symptoms, which remains the province of ALJ. <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." (brackets omitted)).

In sum, Plaintiff's second issue on review fails as a matter of law.

### 3. Dr. Britt's Opinions

In Plaintiff's third and final assignment of error, he alleges that "[t]he ALJ erred in weighing the medical opinion evidence." (Docket Entry 13 at 17 (capitalization and underscoring omitted).) More specifically, Plaintiff contends that "[t]he ALJ should have afforded more weight to Dr. [Brian K.] Britt's opinion" (id. at 18), which limited Plaintiff to less than sedentary level work (id. (citing Tr. 1894)).  According to Plaintiff, Dr. Britt's opinion merited more weight because he "was the only treating or examining source to offer an opinion on Plaintiff's functioning in vocationally relevant terms," and because "Dr. Britt's opinion was consistent with other medical evidence of record which show[ed] several years of treatment for continuing back pain that ultimately resulted in a fusion surgery."  (Id. at 19.)  Moreover, Plaintiff asserts that the ALJ failed "to provide legally sufficient reasons" for rejecting Dr. Britt's opinion.  (Id.)  Those arguments miss the mark.

As an initial matter, the record before the Court reflects that, although Plaintiff visited the Veterans Administration Medical Center in Durham on multiple occasions from 2014 to 2016 (see Tr. 2024-81, 2105-83, 2212-2362), Dr. Britt treated Plaintiff on only one occasion on October 10, 2014 (see Tr. 2065-71), the same date that Dr. Britt provided the opinion in question (see Tr.

1894).  Thus, doubt exists whether, at the time Dr. Britt prepared the opinion at issue, he would qualify as a treating physician under the regulations.  See 20 C.F.R. § 404.1527(c)(i) ("When the treating source has seen [a claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the Social Security Administration] will give the source's opinion more weight then [the Administration] would give it if it were from a nontreating source.").[7]  To the extent Dr. Britt did not constitute a treating source under the regulations, his opinion could not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.).  An any event, the regulations required the ALJ to evaluate Dr. Britt's opinion using the factors outlined in the regulations, as well as to expressly indicate and explain the weight he afforded to such opinion.  See 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and, where an opinion does not warrant controlling weight, the ALJ must "consider all of the . . . factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)).

---

[7] The ALJ referred to Dr. Britt as Plaintiff's "treating physician." (Tr. 22.)  However, the ALJ noted that "Dr. Britt evaluated [Plaintiff] as a new patient on October 10, 2014 and completed the medical source statement on the same day."  (Tr. 22-23.)

On October 10, 2014, Dr. Britt completed a "Medical Opinion Re: Ability to Do Work-Related Activities" for Plaintiff's attorney, and diagnosed Plaintiff with "degenerative disc disease of [the] lumbar spine" causing "chronic lower back pain [with] bilat[eral] radiculopathy." (Tr. 1894.) As a result of that impairment, Dr. Britt concluded that Plaintiff could sit, stand, or walk for less than two hours in an eight-hour workday, could lift and carry less than 10 pounds both frequently and occasionally, would require "the freedom to shift at will between sitting or standing/walking," and would "need to lie down at unpredictable times" during the workday. (Id.) Dr. Britt further opined that Plaintiff could not twist, turn, squat, or climb, and that his back impairment would cause his absence from work more than three times per month. (Id.)

The ALJ weighed Dr. Britt's opinion as follows:

> On October 10, 2014, [Plaintiff's] treating physician, [Dr. Britt], opined that [Plaintiff] was limited to less than sedentary exertion. Dr. Britt evaluated [Plaintiff] as a new patient on October 10, 2014 and completed the medical source statement on the same day. His exam findings were essentially normal and he requested [Plaintiff's] medical records for review. In addition, the evidence of record during that period show multiple visits in which [Plaintiff] was released without restriction, which is consistent with the normal to mild findings on examination. Dr. Britt offers no explanation for his functional limitations or these discrepancies, and given the limited treatment relationship at that time, his opinion is afforded limited weight.

(Tr. 22-23.)

25

Plaintiff first argues that the ALJ should have afforded Dr. Britt's opinion more weight because, "[g]enerally, more weight is afforded to the medical opinion of a source who has examined a claimant than to a source who has not examined a claimant," and Dr. Britt "was the only treating or examining source to offer an opinion on Plaintiff's functioning in vocationally relevant terms." (Docket Entry 13 at 19.)  Although not clear from this argument, Plaintiff appears to challenge the ALJ's decision to afford more weight to the opinions of the non-examining state agency consultants than to those of Dr. Britt, an examining source.

The applicable regulations make clear that, although, as a general matter, opinions from an examining source warrant more weight than those from a non-examining source, see 20 C.F.R. § 404.1527(c)(1), non-examining state agency consultants constitute "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation[,]" 20 C.F.R. § 404.1527(e)(2)(i).  Indeed, ALJs can permissibly credit the opinions of non-examining state agency consultants, who typically render their opinions without the benefit of a full record, over those of examining sources, to the extent the non-examining sources' opinions remain consistent with the evidence received subsequent to their opinions.  See Lapeer v. Astrue, No. 5:08-CV-256-D(1), 2009 WL 2487038, at *7 (E.D.N.C. Aug. 13, 2009) (unpublished).

In this case, "[t]he state agency medical consultants initially opined that [Plaintiff] was capable of medium exertion with limitations, but later opined [on reconsideration] that he was capable of light exertion prior to his fusion surgery and medium thereafter." (Tr. 22.) The ALJ then accorded "substantial weight" to the state agency consultant's opinion that Plaintiff remained capable of light work as "<u>consistent with the evidence received at the hearing level</u>," but afforded "less weight" to "the opinions assessing medium exertion[] as . . . <u>not well supported by the evidence received at the hearing level</u>." (<u>Id.</u> (emphasis added).) Thus, the ALJ properly considered the consistency of the state agency consultants' opinions with evidence received after the consultants offered their opinions, and Plaintiff has not provided any argument or reasons why the ALJ's analysis in that regard fell short (<u>see</u> Docket Entry 13 at 19).

Plaintiff additionally asserts that Dr. Britt's opinion warranted more weight because it "was consistent with other medical evidence of record which show[ed] several years of treatment for continuing back pain that ultimately resulted in a fusion surgery," as well as with the opinions of Dr. Ralph Tack. (<u>Id.</u>)[8] Dr. Tack

---

[8] Plaintiff makes no attempt to cite which evidence of record supports Dr. Britt's significant restrictions. (<u>See</u> Docket Entry 13 at 19.) The Court need not consider that argument further. <u>See, e.g.</u>, <u>Belk, Inc. v. Meyer Corp., U.S.</u>, 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief ."); <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever

opined on January 24, 2014, that Plaintiff could not lift or carry more than 40 pounds, could not climb, crawl, crouch, jump, or run, could not sit or stand for more than 30 minutes at a time without a break, and could not frequently reach above the chest. (Tr. 275.) Thus, as the Commissioner argues (see Docket Entry 16 at 13-14), Dr. Tack's opinion harmonizes far more closely with the RFC than with Dr. Britt's less-than-sedentary opinion. (Compare Tr. 275, with Tr. 19-20, 1894.)

Lastly, Plaintiff asserts that the ALJ failed "to provide legally sufficient reasons" for rejecting Dr. Britt's opinion. (Docket Entry 13 at 19.) However, Plaintiff has failed to provide any argument that demonstrates how the ALJ's proffered reasons, i.e., one-time examination, lack of support from Dr. Britt's examination findings, lack of consistency with other evidence of record, and lack of explanation for the restrictions, do not suffice under the regulations. (See id.) That failure precludes relief on this front. See, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief ."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its

---

hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

arguments squarely and distinctly, or else forever hold its peace."
(internal quotation marks omitted)); <u>Hughes v. B/E Aerospace, Inc.</u>,
No. 1:12cv717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014)
(Schroeder, J.) ("A party should not expect a court to do the work
that it elected not to do.").

In sum, Plaintiff has failed to demonstrate prejudicial error
with respect to the ALJ's evaluation of Dr. Britt's opinion.

<b><u>CONCLUSION</u></b>

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision
finding no disability be affirmed, Plaintiff's Motion for Judgment
Reversing and Modifying the Decision of the Commissioner (Docket
Entry 11) be denied, and Defendant's Motion for Judgment on the
Pleadings (Docket Entry 15) be granted, and that this action be
dismissed with prejudice.


/s/ L. Patrick Auld
<b>L. Patrick Auld</b>
<b>United States Magistrate Judge</b>

November 6, 2018